**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
SANTANDER BANK N.A.,

                                 Plaintiff,          **REPORT AND RECOMMENDATION**

               -against-                **23-cv-3425-DG-ST**

LITTLE FAT TRUCKING and XING WANG,

                              Defendants.
---------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

On May 5, 2023, Santander Bank N.A. ("Plaintiff" or "Santander") sued Little Fat Trucking ("Little Fat") and Xing Wang ("Wang" and together with Little Fat, "Defendants") for their alleged default on a commercial loan agreement. Defendants never answered Plaintiff's Complaint or otherwise appeared in the action. Now before this Court is Plaintiff's Motion for Default Judgment against Defendants to recover breach of contract damages, pre-judgment interest, and attorneys' fees and expenses (the "Motion").

For the reasons discussed below, this Court respectfully recommends GRANTING IN PART and DENYING IN PART the Motion. This Court further recommends awarding Plaintiff $317,142.80 in breach of contract damages, $33,518.50 in pre-judgment interest, $3,305.00 in attorneys' fees, $402.00 in expenses, and post-judgment interest, to be calculated from February 21, 2024, until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## BACKGROUND

The Court takes the following facts from the Complaint and its exhibits.[1]  *See* Compl. Exs. 1–6, ECF Nos. 1, 1-1–1-6.  The Court assumes that the Complaint's well-pleaded factual allegations, except those concerning damages, are true.  *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6, 84 (2d Cir. 2009).

### I.    FACTUAL ALLEGATIONS

Plaintiff is a national banking association chartered under the laws of the United States with its principal place of business located at 200 Liberty Street, New York, New York 10281. Compl. ¶ 3.  Little Fat is a California general corporation with its principal place of business located at 2707 Sunbright Drive, Diamond Bar, California 91765 or 929 South Azusa Avenue, City of Industry, California, 91748.  *Id.* ¶ 4.  Wang is an individual who resides at 2707 Sunbright Drive, Diamond Bar, California 91765.  *Id.* ¶ 5.

In September 2021, Plaintiff and Defendants entered a commercial loan agreement.  *Id.* ¶ 8.  Under the agreement, Plaintiff loaned Little Fat $350,274.00 (the "Principal Amount") to finance the purchase of two Peterbilt 579 vehicles.  *Id.* ¶¶ 9, 10.  Several documents reflect the agreement, including: (1) a Promissory Note and Security Agreement (the "Note"); (2) a Schedule (the "Schedule"); and (3) Wang's personal Guaranty (the "Guaranty").  *Id.* ¶ 8.  On September 10, 2021, Wang, as Little Fat's president, signed the Note and Schedule.  *See* Note, ECF No. 1-1; Schedule, ECF No. 1-2.  Also on September 10, 2021, Wang signed the Guaranty as the Guarantor. *See* Guaranty, ECF No. 1-3.

---

[1] "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit . . . ."  *Subaru Distribs. Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). Courts routinely consider a complaint's exhibits when assessing motions for default judgment.  *See, e.g.*, *Keybank Nat'l Ass'n v. Nour Limo, Inc.*, 345 F.R.D. 555, 563 (E.D.N.Y. 2024).

The Note and Schedule require Little Fat to pay Plaintiff the Principal Amount, along with any applicable interest, in sixty (60) monthly installments, each in the amount of $6,872.00.  *See* Compl. ¶ 12; Note § 1;[2] Schedule.  The Note also grants Plaintiff a security interest in the vehicles, including any related equipment, parts, contract and warranty rights, and any proceeds thereof (collectively, the "Collateral").  *See* Note § 2.

The Note defines several "Events of Default," including Little Fat's failure "to pay any installment of [the] Note . . . on the due date . . . ."  *See id.* §§ 7, 7.1.1.  In the Event of Default, "the entire unpaid balance of payments under [the] Note may, at the option of [Santander] and without presentment, demand, notice, protest or legal process of any kind, be declared, and immediately shall become, due and payable."  *Id.* § 7.2.

Also, in the Event of Default, the Note entitles Santander to default interest.  *See id.* § 8.1. Section 8.1 of the Note provides:

> Commencing with the day after any installment(s) or the entire unpaid balance of payment (by acceleration, maturity, or otherwise) hereunder shall have become due and payable, such installment(s) or the entire unpaid balance of payments (by acceleration, maturity, or otherwise) . . . shall bear interest at the rate of eighteen percent (18%) per annum, but not in excess of the maximum rate permitted by law.

*Id.*

In addition to default interest, the Note entitles Santander to certain administrative charges, costs, and expenses.  *See id.* §§ 8.2, 8.3.  The Note provides that if Little Fat fails to make an installment payment within ten 10 (ten) days after it is due, Little Fat shall pay, upon demand, a late charge of 5% of the unpaid installment.  *See id.* § 8.2.  The Note also requires Little Fat to pay

---

[2] Section 1 of Note reads: "Promise To Pay. FOR VALUE RECEIVED, Debtor promises to pay to the order of the above named secured party or assigns (the 'Secured Party') the Loan Amount(s) plus interest, in installments, payable per the ATTACHED SCHEDULE(S), commencing thirty (30) days after the date set forth on any Schedule(s) attached hereto and forming part of this Promissory Note and Security Agreement (the 'Note'), or such later date as designated in writing by the Secured Party, and continuing on a like day in each month thereafter. All payments shall be made to the address of Secured Party or such other address designated in writing by Secured Party."  Note § 1.

or reimburse Santander for its "fees, costs and expenses (including, but not limited to, attorneys' fees and expenses) incurred in connection with the enforcement of [the] Note." *See id.* § 8.3.

In connection with the Note, Wang executed a personal Guaranty. Compl. ¶ 16; Guaranty. Under the Guaranty, Wang, as Guarantor, "unconditionally, absolutely and irrevocably guarantee[d] the full and punctual payment and performance by [Little Fat] of all of the Liabilities" under the Note. Guaranty § 2; *see* Compl. ¶ 17.

Starting on or about December 20, 2022, and continuing thereafter, Little Fat stopped making monthly payments to Santander. Compl. ¶ 22. On February 22, 2023, Santander sent Defendants a notice of Little Fat's default and demanded, among other things, payment of all outstanding amounts due under the Note and Schedule. *Id.* ¶ 24, Ex. 5. On May 2, 2023, Santander, through its counsel, sent Defendants a letter demanding them to, among other things, pay Santander all outstanding amounts due under the Note, and surrender possession of the Collateral. *Id.* ¶ 24, Ex. 6. Defendants never resumed payments or surrendered the Collateral. *Id.* ¶¶ 24, 27.

## II.    PROCEDURAL HISTORY

Plaintiff filed its Complaint on May 5, 2023. Defendants failed to respond or otherwise defend against the Complaint. On February 14, 2024, this Court ordered Plaintiff's counsel to file a status report to Show Cause why the Court should not dismiss the case for failure to prosecute. *See* Order to Show Cause, ECF No. 13. On the same day, Plaintiff requested a Certificate of Default from the Clerk of Court. *See* Req. Certificate Default, ECF No. 14. On February 21, 2024, the Clerk of Court entered the Default against Defendants. *See* Entry Default, ECF No. 16. On February 22, 2024, Plaintiff moved for Default Judgment against Defendants. *See* Mot., ECF No.

17. On February 23, 2024, the Honorable Diane Gujarati referred the Motion to this Court for Report and Recommendation. *See* Docket Order, dated February 23, 2024.

On June 10, 2024, this Court ordered Counsel for Plaintiff to submit a Memorandum of Law in compliance with Local Civil Rule 7.1.[3] *See* Docket Order, dated June 10, 2024. On June 21, 2024, Plaintiff filed its Memorandum of Law in Support of the Motion. *See* Mem. Law Supp., ECF No. 19.

## **LEGAL STANDARD**

Federal Rule 55 of Civil Procedure provides a two-step process for obtaining a default judgment. *See* Fed. R. Civ. P. 55. Step one is to obtain an entry of default under Rule 55(a). *See* Fed. R. Civ. P. 55(a). Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.*

Step two is to seek default judgment under Rule 55(b). *See* Fed. R. Civ. P. 55(b). Rule 55(b)(1) governs if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation . . . ." In that case, the clerk must, "on the plaintiff's request, with an affidavit showing the amount due . . . enter judgment for that amount and costs against a defendant . . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases," Rule 55(b)(2) governs and requires a party to apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2).

When a plaintiff moves for default judgment after obtaining an entry of default, the Court must accept the complaint's well-pleaded factual allegations as true. *Finkel*, 577 F.3d at 84; *see*

---

[3] The Court could have, alternatively, recommended denial of the Motion for Plaintiff's failure to comply with Local Civil Rule 7.1. *See, e.g.*, *Diaz Saavedra v. Dom Music Box Inc.*, No. 21-CV-6051 (ENV) (RER), 2022 WL 20655809, at *3 (E.D.N.Y. Dec. 5, 2022), *rep. and rec. adopted*, (E.D.N.Y. July 7, 2023) ("Plaintiff's failure to include a memorandum of law alone is sufficient to warrant denial of the motion for default judgment." (internal citations and quotation marks omitted)); *Pompey v. 23 Morgan II, LLC*, 16-CV-2065 (ARR) (PK), 2017 WL 1102772, at *3 (E.D.N.Y. Feb. 13, 2017) ("The absence of a memorandum of law that comports with the requirements of Rule 7.1 could alone form a basis for denying Plaintiff's motion [for default judgment].").

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint."). From there, the Court must determine whether the facts alleged establish the defendant's liability as a matter of law. *Mickalis Pawn Shop*, 645 F.3d at 137. After all, "liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010).

After determining that a defaulting party is liable, the court decides whether, and how much, to award in damages. *See Finkel*, 577 F.3d at 83 n.6 ("a default is not an admission of damages"). The court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). To show entitlement to damages, the movant must show that the "compensation sought relates to the damages that naturally flow from the injuries pleaded." *Morales v. B&M General Renovation Inc.*, 14-cv-7290 (MKB) (MDG), 2016 WL 1266624, at *2 (E.D.N.Y Mar. 9, 2016) (internal citations omitted). The Court can decide on whether, and how much, to award in damages without an evidentiary hearing if "sufficiently detailed affidavits and documentary evidence" support the request for damages. *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, 15-cv-6505 (NGG) (PK), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016).

## DISCUSSION

### I.    JURISDICTION

This Court must "satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against [D]efendants." *Dumolo v. Dumolo*, 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019). This Court has subject matter jurisdiction over this

action because the amount in controversy, exclusive of interest and costs, exceeds $75,000, and

the Parties have diverse citizenship. *See* 28 U.S.C. § 1332. This Court has personal jurisdiction

over Defendants because they consented to it in the Note and Guaranty. *See* Note § 9.11[4]; Guaranty

§ 12[5]; *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can

consent to personal jurisdiction through forum-selection clauses in contractual agreements."); *LG*

*Cap. Funding, LLC v. Worthington Energy, Inc.*, 16-CV-6288 (NGG) (ST), 2018 WL 1370266, at

*3 (E.D.N.Y. Feb. 20, 2018), *rep. and rec. adopted*, 2018 WL 1368025 (E.D.N.Y. Mar. 16, 2018)

(this Court noting that forum-selection clauses contained in promissory notes establish personal

jurisdiction over defendants on a motion for default judgment).

## II.     THE SERVICEMEMBERS CIVIL RELIEF ACT

As a preliminary matter, Plaintiff has not complied with the Servicemembers Civil Relief

Act (the "Act"). *See* 50 U.S.C. § 3931. "The Act requires a plaintiff seeking default judgment to

'file with the court an affidavit stating whether or not the defendant is in military service and

showing necessary facts to support the affidavit.'" *J & J Sports Prods., Inc. v. Vergara*, 19 Civ.

---

[4] Section 9.11 of the Note reads, in part, "Debtor irrevocably consents that any legal action or proceeding against it under, arising out of or in any manner relating to this agreement, may be brought in any court of the state of New York or in the United States District Court for the Eastern District of New York. Debtor, by the execution and delivery of this agreement, expressly and irrevocably assents and submits to the personal jurisdiction of any of such courts in any such action or proceeding, and further irrevocably consents to the service of any complaint, summons, notice or other process relating to such action or proceeding by delivery thereof to it by hand or by mail in the manner provided for in this note. Debtor hereby expressly and irrevocably waives any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue or forum non conveniens or any similar basis. Debtor shall not be entitled in any such action or proceeding to assert any defense given or allowed under the laws of any state other than the state of New York unless such defense is also given or allowed by the laws of the state of New York. Nothing in this agreement shall affect or impair in any manner or to any extent the right of secured party to commence legal proceedings or otherwise proceed against debtor in any jurisdiction or to serve process in any manner permitted by law." Note § 9.11 (modified to sentence case).
[5] Section 12 of the Guaranty reads, in part, "Guarantor irrevocably submits to the jurisdiction and venue of all federal and state courts located in Suffolk County, New York in any action or proceeding brought on this Guaranty (if secured party chooses to bring such action or proceeding in New York), and Guarantor agrees that any process, notice of motion or other application to any of said courts (or a judge thereof) in any such action or proceeding shall be duly served if sent to Guarantor by certified mail, return receipt requested, to the address set forth at the beginning of this Guaranty (and service so made shall be deemed complete five (5) days after the same has been posted as aforesaid)." Guaranty § 12 (modified to sentence case).

2382 (FB) (VMS), 2020 WL 1034393, at *6 (E.D.N.Y. Feb. 6, 2020) (quoting 50 U.S.C. § 3931), *rep. and rec. adopted*, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020).   Conclusory statements, or information and belief, cannot serve as the basis for the affidavit.  *Diaz Saavedra*, 2022 WL 20655809, at *5.  Rather, the affidavit must provide specific facts, "adduced from an investigation conducted after a defendant defaults," to support the stated conclusion.  *Sudilovskiy v. City WAV Corp.*, 22-CV-469 (DG), 2022 WL 4586307, at *3 (E.D.N.Y. Sept. 29, 2022).

Here, Plaintiff presents insufficient facts to support its assertion that Wang is not a servicemember.   In support of its Motion, Plaintiff submitted the Affirmation of its counsel, Clifford Katz.  Katz Aff., ECF No. 17-5 (the "Katz Affirmation").   There, Mr. Katz affirms that "neither of the Defendants are infants or incompetent or are presently in the military service of the United States as appears from the facts of this litigation."  *Id.* ¶ 9.  That conclusory statement, without more, is insufficient to satisfy the Act.  *See Vergara*, 2020 WL 1034393, at *6 ("this Court cannot rely on counsel's affidavit because he conclusorily states that [the defendant] is not a servicemember without providing any facts to support that statement."); *Diaz Saavedra*, 2022 WL 20655809, at *6 ("Because the only declarations submitted in support of the Motion conclusorily state that [the defendant] is not a servicemember, without providing any facts to support that assertion, the Court cannot rely on them to satisfy the requirements of the Act.").

As the court "lacks the power to excuse compliance with the statute," this Court recommends denying the Motion against Wang.  *Sudilovskiy*, 2022 WL 4586307, at *3 (internal citations omitted); *see Lopez v. Metro & Graham LLC*, 22-CV-332 (CBA) (RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *rep. and rec. adopted*, 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) ("A plaintiff's failure to include a certification that the individual defendant is not a servicemember is grounds to deny a motion for default judgment." (internal citations and

quotations marks omitted)).  Should Plaintiff seek to renew its Motion against Wang, Plaintiff could establish compliance with the Act by "obtaining a report certifying active-duty military status through the Servicemembers Civil Relief Act website."  *Mulligan Funding LLC v. Tommy Interior Contracting Corp.*, --- F. Supp. 3d --- , 2024 WL 3513456, at *8 (E.D.N.Y. July 23, 2024) (internal citations omitted).

## III.    LOCAL CIVIL RULE 55.2

Before granting a motion for default judgment, courts in this District must also ensure that the movant "took all the required procedural steps" under Local Civil Rule 55.2.  *Vergara*, 2020 WL 1034393, at *2.  The latest version of Local Civil Rule 55.2 took effect on July 1, 2024. Plaintiff, however, filed its Motion and Memorandum of Law before July 1, 2024.  Accordingly, this Court assesses Plaintiff's compliance with Rule 55.2 based on the previous version of the Rule, effective October 15, 2021.

The previous version of Rule 55.2(b) required a party seeking default judgment from the Court to append the following to its application: (1) the Clerk's certificate of default; (2) a copy of the claim to which no response has been made; and (3) a proposed form of default judgment.  Loc. Civ. R. 55.2(b).  Under the previous version of Rule 55.2(c), "all papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b) . . . shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)."  Loc. Civ. R. 55.2(c).  The Rule also required the moving party to file "proof of such mailing" with the Court.[6] *Id.*

---

[6] Notably, under the new version of the Rule, a party seeking default judgment must file "a certificate of service stating that **all documents in support of the request** for default judgment . . . have been personally served on, or mailed to . . . the party against whom default judgment is sought."  Rule 55.2(3) (emphasis added).  Therefore, under the new version of the Rule, a plaintiff must serve/mail its Memorandum of Law, as well, to the defendant.  Because the new

Here, along with its Motion, Plaintiff submitted the Certificate of Default, the Complaint, and a Proposed Default Judgment, thus satisfying Rule 55.2(b).  *See* Katz Aff. Exs. 6, 8, 10. Plaintiff also filed an Affirmation of Service affirming that it had served, to Little Fat's last known business address, the Motion, the Affirmation of Thomas Reilly (the "Reilly Affirmation"), and the Katz Affirmation, along with their exhibits, which included the Certificate of Default, Complaint, and Proposed Default Judgment, therefore satisfying Rule 55.2(c).  *See* Aff. Serv., ECF No. 18.  As such, Plaintiff has complied with Local Civil Rule 55.2.

## IV.    LIABILITY

As the Motion—with respect to Little Fat—meets the applicable procedural requirements, the Court now assesses liability against Little Fat.  In the Complaint, Plaintiff asserted claims for breach of the Note and Schedule, account stated, foreclosure of a security interest, and replevin against Little Fat.[7]  *See* Compl. ¶¶ 30–40, 47–60.  Plaintiff now moves for default judgment only on the breach of contract claim.  *See* Proposed Order Granting Default J., ECF No. 17-10.  This Court will therefore decide whether the Complaint states a claim for breach of contract against Little Fat for its alleged breach of the Note and Schedule.[8]

### A.  Choice of Law

A federal court exercising diversity jurisdiction applies the forum state's choice of law rules to determine the applicable substantive law.  *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S.

---

version of the Rule did not apply to Plaintiff when it filed its Memorandum of Law, the Court will not inquire into whether Plaintiff mailed/served its Memorandum of Law on Defendant.  The Court notes, however, that Plaintiff did not file a certificate of service reflecting whether it did.

[7] Against Wang, Plaintiff asserted breach of the Guaranty.  *See* Compl. ¶¶ 41–46.

[8] To the extent Plaintiff has not already abandoned its other claims, the District Court can dismiss Plaintiff's other claims as duplicative.  *See Tache Co. N.V. v. Verma Gold & Diamond LLC*, 21-CV-03017 (JMA) (AYS), 2022 WL 198528, at *1 (E.D.N.Y. Jan. 20, 2022) (granting default judgment on breach of contract claim but dismissing claims for conversion, account stated, good sold and delivered, and replevin as duplicative); *Cont'l Cas. Co. v. Contest Promotions NY, LLC*, 15-CV-501 (MKB), 2016 WL 1255726, at *4 (E.D.N.Y. Mar. 26, 2016) (granting default judgment on breach of contract claim but denying default judgment on unjust enrichment and account stated claims as duplicative of the breach of contract claim).

487, 497 (1941). Here, in New York, the choice of law rules are "clear in cases involving a contract with an express choice-of-law provision." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000). "Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Id.* In this case, the Note contains a New York choice of law provision, and one party to the transaction, Santander, is based in New York.[9] *See* Note § 9.10. Accordingly, this Court applies New York law to Plaintiff's breach of contract claim.

### B. Breach of Contract Claim

To state a claim for breach of contract under New York law, the complaint must allege: (i) the existence of a contract between the parties; (ii) plaintiff's performance under the contract; (iii) defendant's breach of its contractual obligations; and (iv) resulting damages. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

Here, Plaintiff's Memorandum of Law cites no law regarding Plaintiff's breach of contract claim. *See* Pl.'s Mem. Law Supp. However, accepting the Complaint's well-pleaded factual allegations as true, Plaintiff, indeed, states a claim for breach of contract. First, Plaintiff alleges the existence of a contract—namely, the Note and Schedule—between the Parties.[10] *See* Note; Schedule; Compl. ¶¶ 8, 9. Indeed, the Note names Santander as the "Secured Party" and Little Fat as the "Debtor." *See generally* Note. Second, Plaintiff alleges that it performed under the Note and Schedule by loaning the Principal Amount to Little Fat for the purchase of two Peterbilt 579 vehicles. *See* Compl. ¶ 9. Third, Plaintiff alleges that Little Fat breached the Note by ceasing to

---

[9] Section 9.10 of the Note reads, "This agreement shall be deemed to have been delivered at and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the state of New York, without regard to conflicts of law rules." Note § 9.10 (modified to sentence case).

[10] Plaintiff attaches the Note and Schedule to the Complaint. Plaintiff also attaches the following related documents: the Note's Delivery and Acceptance Receipt; Little Fat's Corporate Resolution and Certificate of Incumbency; and a Power of Attorney allowing Santander to act as Little Fat's agent for the purpose of titling and perfecting liens on the Peterbilt vehicles. *See* Compl. Ex. 1.

make monthly payments in accordance with the Note and Schedule's terms starting on or about December 20, 2022. *See id.* ¶ 22. Finally, Plaintiff alleges that it has suffered damages because of the breach, as Little Fat now owes Plaintiff, at a minimum, the Note's outstanding balance. *See id.* ¶ 35. At the default judgment stage, these allegations suffice to establish Little Fat's liability for breach of contract. *See Keybank Nat'l Ass'n*, 345 F.R.D. at 558, 563 (granting Plaintiff's motion for default judgment on breach of contract claim).

## V.    DAMAGES

As Plaintiff has established Little Fat's liability, the Court turns to assess Plaintiff's request for damages. In total, Plaintiff seeks $395,747.39 in damages. *See* Proposed Order Granting Default J. at 2. Specifically, Plaintiff seeks damages from the following categories:

(1) $317,142.80 for the amount owed under the Note and Schedule (i.e. breach of contract damages);

(2) $72,471.59 in pre-judgment interest from December 20, 2023, to February 23, 2024;

(3) $5,380.00 in attorneys' fees; and

(4) $753.00 in court filing and process server fees.

*See id.* The Court will consider each category in turn.

### A.  The Amount Owed Under the Note and Schedule

Plaintiff asserts that Little Fat owes $317,142.80 in damages for breach of the Note and Schedule. *See id.* Plaintiff does not, however, provide a calculation of those purported damages. Nevertheless, the Court will endeavor to determine if Plaintiff's submissions allow the Court to ascertain the amount in damages for breach of the Note and Schedule with "reasonable certainty." *Credit Lyonnais Sec.*, 183 F.3d at 155.

Damages for breach of contract "should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." *Fonz, Inc. v. City Bakery Brands,*

*LLC*, 19 CV 10854 (LJL) (RWL), 2021 WL 5235190, at *4 (S.D.N.Y. Sept. 27, 2021), *rep. and rec. adopted*, 2021 WL 4803821 (S.D.N.Y. Oct. 13, 2021) (internal quotations and citations omitted).  "In New York, damages for a breach of contract claim based on a failure to pay is generally limited to recovery of the unpaid contract amount and accrued interest."  *Id.*

Here, Santander loaned Little Fat a total Principal Amount of $350,524.00.  *See* Schedule.  The Note and Scheduled obligated Little Fat to repay this Principal Amount, plus interest, in sixty (60) monthly installments, each in the amount of $6,872.00.  *See id.*; Note ¶ 1 ("Debtor promises to pay . . . the Loan Amount(s) plus interest, in installments . . .").  The Note and Schedule are silent as to the applicable interest rate—and Plaintiff does not identify one.  However, $6,872.00 multiplied by 60 equals $412,320.00.  The $61,796 difference between the Principal Amount ($350,524.00) and the total amount due under the Note and Schedule ($412,320.00) is presumably interest.

Plaintiff's papers do not specify which, or how many, monthly payments Little Fat made, before it defaulted, to Santander.  Attached to the Reilly Affirmation, however, is a "schedule" that Reilly prepared using (unspecified) Santander records.  *See* Reilly Aff. ¶ 7, Ex C., ECF No. 17–4.[11]  According to Reilly's schedule,[12] Little Fat paid $96,208.00 under the Note before it ceased making payments.  *See id.*  Although the Court does not wish to speculate, $96,208.00 (the amount Little Fat paid towards the Note) divided by $6,872.00 (the monthly installment amount) equals 14, suggesting that Little Fat made 14 monthly installment payments to Santander under the Note and Schedule.

---

[11] As the Reilly Affidavit identifies this schedule as "Exhibit C," the Court will cite to the schedule as "Exhibit C" despite there being no exhibit cover sheet.

[12] Reilly's schedule lacks detail, but is the closest Plaintiff comes to providing the Court with its breach of contract damages' calculation.

The amount Little Fat paid, $96,208.00, subtracted from the total amount owed on the Note, $412,320.00, is $316,112.00, which is $1,030.80 less than the $317,142.80 that Plaintiff seeks in breach of contract damages.  As Plaintiff has asserted that Little Fat also owes late charges on the Note and Schedule, late charges probably make up the additional $1,030.80.  *See* Compl. Exs. 5, 6.  However, Plaintiff does not specify the monthly installments to which it added late charges. The Court will therefore perform its own calculations to try to determine the monthly installments to which Plaintiff added late charges.

The Note requires Little Fat to pay a 5% late charge if it fails to pay a monthly installment within ten days of its due date.  *See* Note § 8.2.  5% of $6,872.00 (the monthly installment amount) is $343.60.  $1,030.80 divided by $343.60 is 3, which suggests that Plaintiff added late charges to three monthly installments.  As Little Fat ceased making payments on or about December 20, 2022, and Santander notified Little Fat of its default on February 22, 2023, the Court assumes that Santander added late charges to the installments due in December 2022, January 2023, and February 2023.  *See* Compl. ¶¶ 22, 24.

As the Court can, by performing its own calculations, ascertain Plaintiff's damages under the Note and Schedule with reasonable certainty, the Court recommends awarding Plaintiff $317,142.80 against Little Fat for its breach of contract.

## B.  Pre-Judgment Interest

Plaintiff also seeks $72,471.59 in pre-judgment interest but provides no calculations showing how it arrived at that number.  *See* Proposed Order Granting Default J. at 2.  Plaintiff only states that it is seeking pre-judgment interest from December 20, 2023, to February 23, 2024,[13] in

---

[13] Plaintiff sought the same amount of interest as of at least two earlier dates in February 2024, specifically February 14, 2024, the date of the Reilly Affirmation, and February 22, 2024, the date of Reilly's schedule.  *See* Reilly Aff. ¶ 7, Ex. C.  This Court will use February 23, 2024, as Plaintiff's end date for its requested pre-judgment interest.

accordance with the Note's 18% default interest provision. *See id.*; Reilly Aff. ¶ 7, Ex. C.; Katz Aff. ¶ 16.  Indeed, the Note provides for an 18% per annum default interest if Little Fat defaults on the Note. *See* Note § 8.1.  Section 8.1 of the Note reads:

> Commencing with the day after any installment(s) or the entire unpaid balance of payment (by acceleration, maturity, or otherwise) hereunder shall have become due and payable, such installment(s) or the entire unpaid balance of payments (by acceleration, maturity, or otherwise) (as the case may be) shall bear interest at the rate of eighteen percent (18%) per annum, but not in excess of the maximum rate permitted by law.

*See id.*  However, due to Plaintiff's insufficient submissions, the Court cannot determine whether $72,471.59 is the correct amount in pre-judgment interest owed to Plaintiff under the Note.

First, 18% of $316,112.00—i.e. the "entire unpaid balance of payments" at the time of Little Fat's default—is only $56,900.16.  Second, Plaintiff only seeks pre-judgment interest from December 20, 2023, to February 23, 2024, but does not explain how $72,471.59 accumulated over roughly two months.  Dividing $56,900.16 (18% of $316,112.00) by 365 (days in the year) equals a *per diem* interest rate of $155.89 (rounded to the nearest hundredth).  Multiplying $155.89 by 65 (the number of days between December 20, 2023 and February 23, 2024) only amounts to $10,132.85.  Third, even assuming Plaintiff intended to seek pre-judgment interest from December 20, 202*2*—i.e. the day of Little Fat's default—Plaintiff's calculation still does not add up.  Multiplying $155.89 by 430 (the number of days between December 20, 2022, and February 23, 2024) equals $67,032.70—still short of Plaintiff's proposed number.  Finally, and more substantively, although the Note does *not* entitle Santander to a 18% default interest if it is beyond "the maximum rate permitted by law," Plaintiff does not address whether the law, indeed, permits the 18% rate.

Ultimately, without additional supporting documentation, the Court cannot determine the validity of Plaintiff's request for $72,471.59 in-prejudgment interest.  Indeed, "Plaintiff cannot

expect the Court to sift through its supporting documentation while engaging in guesswork to

figure out how Plaintiff reached the amounts stated" in the Motion.  *U.S. Bank Nat'l Ass'n as Tr.*

*for RMAC Tr., Series 2016-CTT v. Kozikowski*, No. 19-CV-0783 (DLI) (CLP) 2022 WL 4596753,

at *8 (E.D.N.Y. Sept. 30, 2022).  This Court therefore recommends denying Plaintiff's request for

$72,471.59 in pre-judgment interest.  *See Prepaid Ventures, Ltd. v. Compton*, 18-cv-2102 (DLI)

(SJB), 2023 WL 2662311, at *9 (E.D.N.Y. Mar. 28, 2023) (denying request for pre-judgment

interest where plaintiffs "made mention of specific interest rates to apply, but then failed to explain

why those rates are appropriate and, more fundamentally, failed to provide a breakdown of the

interest they seek or how it was calculated.").

Although Plaintiff makes no alternative claim for *statutory* pre-judgment interest, this

Court recommends awarding Plaintiff, instead, New York's statutory pre-judgment interest, which

is 9% per annum.[14]  *See* N.Y. C.P.L.R. §§ 5001(a), 5004(a).  Indeed, under New York law, a party

shall recover pre-judgment interest "upon a sum awarded" for breach of contract.  N.Y. C.P.L.R. §

5001(a).  Such interest is "generally mandatory," *Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir.

2015), and "shall be computed from the earliest ascertainable date the cause of action existed."

N.Y. C.P.L.R. § 5001(b).

Applying New York's statutory interest here, the Court computes the interest from the date

of Little Fat's breach.  *See Tache*, 2022 WL 198528, at *2.  The Court therefore uses December

20, 2022—the day Plaintiff stopped making payments on the Note and Schedule—as the starting

date for the interest calculation.  The Court uses February 23, 2024, as the end date for its interest

---

[14] New York law applies to the issue of pre-judgment interest, as "under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (alteration in original) (quoting *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131 (2d Cir. 1984)).  As discussed, New York law applies to Plaintiff's breach of contract claim, and therefore applies to Plaintiff's claim for pre-judgment interest.

calculation, in accordance with Plaintiff's request for pre-judgment interest up to that date. 9% of $316,112.00 is $28,450.08. That number divided by 365 equals the *per diem* amount of $77.95 (rounded to the nearest hundredth). $77.95 times 430 equals $33,518.50. This Court thus recommends awarding $33,518.50 in-prejudgment interest, as calculated in accordance with New York's 9% statutory rate.

### C. Post-Judgment Interest

Plaintiff does not request post-judgment interest. However, 28 U.S.C. § 1961 "ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Mulligan Funding*, 2024 WL 3513456, at *11 (internal citations and quotations marks omitted). This Court therefore recommends awarding Plaintiff post-judgment interest, which is "to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961." *Id.* (awarding post-judgment interest where Plaintiff did not explicitly seek it); *see Tacrui v. Nithin Constr. Co.*, No. 14–CV–2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) ("Plaintiffs are entitled to post-judgment interest on all money awards as a matter of right.").

### D. Attorneys' Fees

Plaintiff also seeks $5,380.00 attorneys' fees. *See* Proposed Order Granting Default J. at 2. Plaintiff requests $2,075.00 for 8.3 hours of associate work, billed at $250 per hour, as well as $3,305.00 for 16.7 hours of partner work, billed at $250-$300 per hour. *See id.* In support of its request, Plaintiff submits counsel's redacted billing summaries and time entries. *See* Katz Aff. Ex. D, ECF No. 17-9.

"Under New York law, the court should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the

language of the contract." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (internal quotation marks and citations omitted).  Even where a contract "states that a prevailing party may recover 'all' of its attorneys' fees, the Court must still determine whether the amount requested is reasonable." *PSG Poker, LLC v. DeRosa-Grund*, 2008 WL 2755835, at *4 (S.D.N.Y. July 14, 2008), *rep. and rec. adopted*, 2008 WL 3852051 (S.D.N.Y. Aug. 15, 2008).

Here, the Note provides that Little Fat "shall pay (or at [Santander]'s option, reimburse [Santander] for) **all of** [Santander]'s fees, costs and expenses (**including**, but not limited to, **attorneys' fees and expenses) incurred in connection with the enforcement of this Note** . . . ." Note § 8.3 (emphasis added).  As the Note allows Plaintiff to recover attorneys' fees, the only remaining question is whether Plaintiff's request for attorneys' fees is reasonable.

To assess reasonableness, "the Court must first determine a reasonable hourly rate for the legal services performed, using factors such as the labor and skill required, the difficulty of the legal questions, the attorney's customary rate, the amount at stake, and awards in similar cases." *LG Cap. Funding, LLC v. M Line Holdings, Inc.*, 422 F. Supp. 3d 739, 760 (E.D.N.Y. 2018).  "Once the Court determines the reasonable hourly rate, it then multiplies that rate by the reasonable number of hours expended to arrive at the presumptively reasonable fee." *Id.*  Even so, "[i]n reviewing an application for attorney's fees, courts need not accept the role of accountants . . . ." *Chauca v. Park Mgmt Sys., LLC*, No. 10-CV-05304 (ENV) (RER), 2016 WL 8117953, at *1 (E.D.N.Y. July 18, 2016).

In applying for attorneys' fees, Plaintiff bears "the burden to submit sufficient documentation in support of hours worked, rates claimed, and costs." *Id.*  Plaintiff also "bears the burden of providing evidence . . . as to the relevant qualifications and experience of the various

attorneys and paralegals that worked on [its] case." *J.G. v. New York City Dep't Educ.*, --- F. Supp. 3d --- , 2024 WL 728626, at *10 (S.D.N.Y. Feb. 22, 2024).

The Court cannot assess the reasonableness of attorneys' fees if the billing records lack sufficient detail. *See PSG Poker*, 2008 WL 2755835, at *4. Attorneys' fees must be "documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *LG Cap. Funding*, 422 F. Supp. 3d at 760 (internal citations and quotation marks omitted).

Here, Plaintiff does not provide sufficient detail for the Court to assess the reasonableness of all the requested attorneys' fees. In his affirmation, Mr. Katz affirms that he is a member[15] of the law firm Platzer, Swergold, Goldberg, Katz & Jaslow, LLP. *See* Katz Aff. ¶ 1. Mr. Katz does not, however, state the names of the other attorneys who worked on Plaintiff's case, whether those attorneys are partners or associates (let alone junior, mid-level, or senior associates), or the length of those attorneys' time in practice. While Plaintiff's counsel's billing records identify Howard M. Jaslow and Connor Peters as two "fee earners" on Plaintiff's case (in addition to Mr. Katz himself), the records do not specify whether those individuals are attorneys, paralegals, or hold other roles entirely.

As such, this Court does not have enough information to determine the reasonable hourly rate for the work performed by either Howard Jaslow or Connor Peters. The Court therefore recommends denying the request for any of Howard Jaslow's or Connor Peters's fees.[16] *See Wang v. XBB, Inc.*, 18-CV-7341 (PKC) (ST), 2024 WL 184263, at *4 (E.D.N.Y. Jan. 17, 2024) (noting

---

[15] The Court assumes that Mr. Katz is (also) a partner at his firm, given that the firm is purportedly a Limited Liability Partnership, and given Plaintiff's specific request for "partner" fees. *See e.g.*, Proposed Order Granting Default J. at 2.

[16] Plaintiff's counsel's invoice dated April 5, 2023, shows Connor Peters having worked 1.4 hours on Plaintiff's case at a rate of $0 per hour. To the extent Plaintiff seeks an award of any fees for Connor Peters's 1.4 hours of work at a rate above $0 per hour, such a request is improper.

that a law firm "must live with the consequences of the choices made in its initial application, along with the consequences of its irresponsible and haphazard record- and time-keeping practices.").

The Court will, however, use the limited information it has about Mr. Katz to assess the reasonableness of his fees. "Hourly rates awarded in the Eastern District of New York are typically based on years of experience, and generally range from $300-$450 per hour for partners . . . ." *New Falls Corp. v. Soni Holdings, LLC*, 19-CV-00449 (HG) (LGD), 2023 WL 5806294, at *7 (E.D.N.Y. July 6, 2023) (internal citations omitted). Here, Mr. Katz's billable rate on Plaintiff's case ranged from $250 to $300 per hour. *See* Katz Aff. Ex. D. Given that Mr. Katz's rate falls on the lower end of the generally acceptable range, the Court finds Mr. Katz's billing rate reasonable.

According to the billing records, Mr. Katz billed 12.6 hours of time to Plaintiff's case. *See id.* The Court finds this amount of time to also be reasonable. *See Bank of America, N.A. v. Brooklyn Carpet Exch., Inc.*, 2016 WL 8674686, at *10 (S.D.N.Y. May 13, 2016) (collecting cases finding that 13.3 to 20.6 hours was a reasonable amount of time to bill for breach of contract cases in which a default judgment was entered). Based on the billing records, Mr. Katz billed $3,455.00 in fees for his work on this case. *See* Katz Aff. Ex. D. However, as Plaintiff has only requested $3,305.00 in fees for partner work on this case, the Court recommends awarding Plaintiff $3,305.00 in total attorneys' fees. *See* Proposed Order Granting Default J. at 2.

### E. Filing and Process Server Fees

In addition to attorneys' fees, Plaintiff seeks filing and process server fees. *See id.*; Katz Aff. ¶ 16. Courts routinely award reasonable filing and service of process fees on motions for default judgment. *See, e.g.*, *LG Cap. Funding*, 422 F. Supp. 3d at 749, 761 (finding reasonable, and thus awarding, $493.20 in filing and process server fees). Here, Plaintiff seeks $753.00 in

20

filing and process server fees.  Specifically, Plaintiff seeks the $402.00 filing fee, and the $394.84 process server fee.  *See* Proposed Order Granting Default J. at 2.  However, $402.00 plus $394.84 equals $796.84, which is $43.84 more than Plaintiff's requested amount.  *See id*.

Plaintiff's counsel's invoice dated June 15, 2023, lists a $402.00 expense, dated May 5, 2023, for "Filing Fees – EDNY Complaint Filing Fees."  *See* Katz Aff. Ex. D.  This invoice plainly reflects the fee Plaintiff incurred when filing the Complaint.  As such, and because the Note entitles Plaintiff to expenses, including attorneys' expenses, "incurred in connection with the enforcement of [the] Note," the Court recommends awarding Plaintiff the $402.00 filing fee.  *See* Note § 8.3.

A review of Plaintiff's submissions does not confirm, however, the requested amount in process server fees.  Indeed, Plaintiff's counsel's invoices list various expenses concerning the service of documents—but the amounts listed do not add up to $394.84.[17]  *See* Katz Aff. Ex. D. Moreover, Plaintiff did not submit a receipt for the process server.  Plaintiff only submitted Affidavits of the process server, which do not reflect the service's cost.  *See id.* Ex. B, ECF No. 17-7.  Without further supporting documentation, the Court cannot determine the accuracy of Plaintiff's requested amount in process server fees.  The Court therefore recommends denying Plaintiff's request for $394.84 in process server fees.  *See Wang*, 2024 WL 184263, at *4 (noting

---

[17] The invoice dated July 6, 2023, lists two expenses dated June 20, 2023, totaling $187.50 for "Litigation Support Vendors Guaranteed Subpoena Service to serve documents to serve parties outside of the State of New York 20230515172312" and "Litigation Support Vendors Guaranteed Subpoena Service to serve documents to serve parties outside of the State of New York 20230515171831."  *See* Katz Aff. Ex. D.  Plaintiff's counsel's invoice dated August 7, 2023, lists four expenses dated either July 10, 2023 or July 19, 2023, totaling $225.00 for "Litigation Support Vendors Guaranteed Subpoena Service to serve documents 20230621100709," "Litigation Support Vendors Guaranteed Subpoena Service to serve documents 20230621101353," "Litigation Support Vendors Guaranteed Subpoena Service to serve documents to others 20230627145941," and "Litigation Support Vendors Guaranteed Subpoena Service to serve documents to others 20230627145521." *See id.*  Finally, Plaintiff's counsel's invoice dated September 11, 2023, lists two expenses dated either August 28, 2023, or August 29, 2023, totaling $112.50 for "Litigation Support Vendors Guaranteed Subpoena to serve documents 20230616114452" and "Litigation Support Vendors Guaranteed Subpoena Service to serve documents invoice 20230616114316."  *See id.*  There is no apparent combination of these numbers—i.e. $187.50, $225.00, and $112.50—totaling $394.84.

that the Court would not "excuse or overlook [an attorney's] inability to provide . . . missing documentation . . .").

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court GRANT IN PART and DENY IN PART the Motion.  This Court further recommends that the District Court award Plaintiff $317,142.80 in breach of contract damages, $33,518.50 in pre-judgment interest, $3,305.00 in attorney's fees, $402.00 in expenses, and post-judgment interest, to be calculated from February 21, 2024, until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## OBJECTIONS TO THIS REPORT AND RECOMMEDATION

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 Fed. Appx. 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


**SO ORDERED.**


                                                    /s/
                                                    Steven Tiscione
                                                    United States Magistrate Judge
                                                    Eastern District of New York


Dated: Central Islip, New York
September 9, 2024